OASTLER *v*. PARKS.

Opinion delivered July 10, 1922.

1. HUSBAND AND WIFE—MORTGAGE—INDEBTEDNESS SECURED.—Where the undisputed evidence showed that certain notes of mortgagor's husband represented the indebtedness intended to be secured by her trust deed, although such notes did not correspond in date with the notes described in such deed, the contention that the indebtedness was not sufficiently identified because appellant did not execute her individual notes to cover same will not be sustained.

2. DEEDS—DELIVERY.—Where a wife signed and executed a trust deed to be delivered to grantee to secure him for paying her husband's indebtedness, and it was delivered to grantee by her husband, she is estopped to deny delivery.

3. MORTGAGES—CONSIDERATION.—Where a grantee, in consideration of the execution and delivery to him of a trust deed, paid a $750 debt owed by grantor's husband, there was a sufficient consideration for the execution of the deed.

Appeal from Clark Chancery Court; *James D. Shaver,* Chancellor; affirmed.

*Callaway & Callaway,* for appellant.

The notes intended to be secured by the deed of trust were not the notes of B. R. Oastler. To entitle a party to reform a written instrument upon the ground of mistake it is essential that the mistake be mutual and common to both parties. 102 Ark. 334; 89 Ark. 309; 71 Ark. 614. There was no delivery of the deed; it cannot take effect without delivery. 77 Ark. 89; 113 Ark. 289. There was no consideration for the deed of trust. 34 Ark. 1; 35 Ark. 480; 45 Ark. 117; 70 Ark. 516; 107 Ark. 10. A mortgage (of the wife's property) given for a preexisting debt of the husband without a new consideration is unenforceable. 21 Cyc. 1486. A promise to perform an existing contract with a third person or the performance of it, does not constitute a valuable consideration. 13 C. J. 356. Where the consideration named in a deed is not the true consideration, and was inserted through fraud or mistake, such fact may be shown to defeat the conveyance. 125 Ark. 441. The

deed of trust was void for uncertainty.    30 Ark. 657;
35 Ark. 470; 30 Ark. 640.    This being a voluntary con-
veyance the plaintiff had no right to have it reformed; a
court of equity will not reform a voluntary conveyance.
80 Ark. 548; 15 Ark. 519; *Howard* v. *Howard,* 152 Ark.
387.

HUMPHREYS, J.    Appellee instituted suit against ap-
pellant in the Clark County Chancery Court to foreclose
a deed of trust against the south half of the southwest
quarter of section 1, township 7 south, range 18 west, in
said county, given to secure two notes in the sum of $370
each, bearing interest at the rate of 8% per annum from
date until paid, the first note due January 1, 1918, and the
second January 1, 1919.    The notes and deed of trust were
made exhibits to the bill.    The notes were described in
the deed of trust as of even date with it.    The notes were
dated on June 9, 1917, and signed by B. R. Oastler, the
husband of appellant.    The deed of trust was executed
by appellee on the 17th day of July, 1917, and described
the 80-acre tract of land as the south half of the south-
west quarter, section 1, township 7, range 18.    It was
alleged in the bill that the notes signed by B. R. Oastler
in the sum of $270 each, due respectively on January 1,
1918, and January 1, 1919, were the notes intended to be
secured by said deed of trust; and that the land intended
to be mortgaged was the south half of the southwest quar-
ter of section 1, township 7 south, range 18 west, in Clark
County, Arkansas.

Appellant filed a separate answer admitting the ex-
ecution of the deed of trust but denying its validity on the
alleged grounds that it was not delivered; that the land
was insufficiently described; that the notes alleged to
have been secured represented the antecedent debt of her
husband; that neither she nor her husband received any
present consideration for the deed of trust, in the nature
of money or extension of time for the payment of her
husband's debt, or in any other way.    It was also denied

in the answer that the alleged notes were intended to be secured by the deed of trust.

The cause was submitted to the court upon the pleadings and testimony adduced by the respective parties, which resulted in a reformation of the deed of trust to conform to the allegations of the bill and a foreclosure of the lien upon the land to pay the notes executed by appellant's husband on June 9, 1917.

From that decree an appeal has been duly prosecuted to this court.

The record reflects that appellee and B. R. Oastler, appellant's husband, were partners, and while conducting the partnership business became indebted to the Elk Horn Bank & Trust Co. in the sum of $1,480; that Oastler could not pay his part of the debt and agreed to execute his notes for one-half the amount to appellee and secure same by a deed of trust on said 80 acres of land if appellee would pay his portion of the indebtedness to the bank; that, pursuant to the agreement, B. R. Oastler executed two notes to him on June 9, 1917, in the sum of $370 each, bearing interest at the rate of 8% per annum from date until paid, due respectively on January 1, 1918, and January 1, 1919; that on the 7th of July, 1917, he delivered the deed of trust executed by appellant to him to secure said notes; that upon the delivery of the trust deed to appellee he paid the partnership debt to the bank; that the two notes represented the only debt B. R. Oastler owed appellee; that the only piece of land owned by appellant at the time she executed the deed of trust was the south half of the southwest quarter of section 1, township 7 south, range 18 west; and that appellant knew of the partnership indebtedness, and that appellee was willing to pay the same and give her husband time to pay his part thereof, if he was given a deed of trust on the land in question, to secure him. Appellant testified that her purpose and intent was to execute her individual notes to cover the indebtedness and secure them by the deed of trust, but that after she executed the deed

of trust, she changed her mind and did not execute the notes, or deliver the deed of trust to appellee.

Appellant's first contention for reversal is, that the notes intended to be secured by the deed of trust were not the notes of B. R. Oastler. It is true the B. R. Oastler notes do not correspond in date with the notes described in the deed of trust, but the undisputed evidence shows they represent the indebtedness intended to be secured. They were given in evidence of a payment to be made by appellee to said bank, which appellant's husband owed it, when the deed of trust should be delivered to him. To hold that the indebtedness was not sufficiently identified because appellant did not execute her individual notes to cover same would be giving more regard to form than substance.

Appellant's next contention for reversal is that there was no delivery of the deed of trust. The trust deed was signed and acknowledged by appellant for the purpose of delivering it to appellee to secure him for paying her husband's indebtedness to the bank. It was delivered to appellee by her husband, and recorded. Appellee accepted the security, and in good faith paid the indebtedness to the bank. She put it in the power of her husband to deliver the deed, as her agent, and cannot be heard to say that he delivered it without authority. She contents herself with swearing that she did not deliver the deed to appellee. She does not volunteer an explanation as to how it got into the possession of her husband. The only reasonable inference is that she gave it to him to use for the purposes for which it was executed. She is clearly estopped to deny the delivery thereof.

Appellant's last contention for reversal is that there was no consideration for the deed of trust. It is argued that, if given as a security, it was given to secure an antecedent debt of her husband, and was therefore without a present consideration, and void. This contention is not supported by the fact. The undisputed fact is that,

upon the delivery of the deed of trust, and, in reliance thereon, appellee parted with $740 in cash in order that appellant's husband might liquidate his indebtedness to the bank. This was a present consideration. The consideration being sufficient, it was proper to reform the instrument to conform to the intent of the grantor and decree a foreclosure upon it as reformed.

The decree is therefore affirmed.