2007-NMCA-002

149 P.3d 955

Jerome SEDILLO, Plaintiff–Appellant,

v.

State of NEW MEXICO, DEPARTMENT OF PUBLIC SAFETY, New Mexico State Police, John Denko, Jr., Cabinet Secretary, Carlos R. Maldonado, and New Mexico State Police Board, Defendants–Appellees.

No. 25,914.

Court of Appeals of New Mexico.

Oct. 31, 2006.

Certiorari Granted, No. 30,118, Jan. 2, 2007.

Steven K. Sanders & Associates, L.L.C., Donald Sears, Jr., Steven K. Sanders, Albuquerque, NM, for Appellant.

Patricia A. Madrid, Attorney General, Jerome Marshak, Assistant Attorney General, NM Department of Public Safety, Albert R. Fugere, Deputy Chief Counsel, Santa Fe, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} Jerome Sedillo (Plaintiff) appeals from the district court's orders granting summary judgment to the State of New Mexico Department of Public Safety, New Mexico State Police, Cabinet Secretary John Denko, Chief/Deputy Secretary Carlos Maldonado, and New Mexico State Police Board (Defendants). Plaintiff contends that (1) the district court erred in granting Defendants' motion for summary judgment denying Plaintiff a private right of action under the Peace Officer's Employer–Employee Relations Act (the POEERA) and (2) the district court erred in granting Defendants' motion for summary judgment upholding Defendants' decision to deny Plaintiff's reinstatement. We affirm the district court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} Plaintiff filed a verified petition for writ of mandamus and complaint for declaratory judgment, injunctive relief, and damages for Defendants' violation of New Mexico statutes and Department of Public Safety rules and regulations. Specifically, Plaintiff complained that his statutory rights to a full and fair investigation of his application to be reinstated as a member of the Department of Public Safety of the New Mexico State Police (DPS) were violated under DPS rules and regulations and the POEERA. *See* NMSA 1978, § 29–14–1 to –11 (1991).

{3} Plaintiff was employed as a New Mexico State Police Officer from December 1992 until August 9, 2001, when he voluntarily resigned. In May 2000, several State Police Officers, including Plaintiff, were assigned to the Los Alamos area during the Cerro Grande fire. On May 22, 2000, several DPS officers engaged in an incident which allegedly involved racially discriminatory actions toward a fellow officer, Officer Dexter Brock

(the Brock incident). Officer Brock filed a complaint against the State of New Mexico for racial discrimination, which was later settled. DPS opened an internal affairs investigation into the allegations of Officer Brock. Plaintiff was informed that an investigation into the Brock incident was being conducted. On December 28, 2000, Plaintiff was advised by then Chief of Police, Frank Taylor, that Plaintiff was implicated in the Brock incident. Plaintiff was alleged to have failed to follow rules, regulations, policies, or procedures and to have engaged in conduct unbecoming an officer with regard to Brock. Plaintiff denied the allegations; however, he was ordered to submit to a polygraph interrogation session on January 29, 2001. During the course of the polygraph interrogation, Plaintiff also denied involvement in the racially discriminatory actions against Officer Brock. At the conclusion of the examination, Plaintiff was informed that his denials were found to be deceptive under the test standards. Subsequently, Plaintiff was advised by a fellow officer that his employment with the State Police was going to be terminated. During the investigation, but before any disciplinary action could be imposed against him, Plaintiff accepted another position with the Department of Energy and resigned from the State Police effective August 9, 2001.

{4} In 2002, Plaintiff applied for reinstatement as an officer with the State Police. Plaintiff was advised by the former Chief of Police, Chief Taylor, that his application would not be considered pursuant to DPS Policy PRS:01:00 (the Policy). The Policy states that "[n]o applicant shall be considered for reinstatement who previously was terminated, resigned in lieu of termination proceedings, or resigned either while disciplinary proceedings were pending, in process, or prior to serving any discipline imposed." On January 15, 2003, Plaintiff again requested reinstatement by letters to Defendants Cabinet Secretary John Denko and Chief/Deputy Secretary Carlos Maldonado, who were part of a new police administration. By letter dated February 5, 2003, Chief Maldonado advised Plaintiff that his request for reinstatement was denied pursuant to the Policy.

{5} In response to Plaintiff's petition and complaint, Defendants filed two motions for summary judgment. Defendants' first motion was granted in part and denied in part. The district court's order granted the motion on the basis that (1) the Policy is valid and enforceable, having been enacted pursuant to the authority granted by NMSA 1978, § 29–2–4.1 (1979); (2) the Policy was not required to be filed under the State Rules Act, NMSA 1978, §§ 14–4–1 to –11 (1967, as amended through 1995), which requires State agencies to file and publish rules, regulations, and proclamations; and (3) the POEERA does not create a private right of action for money damages for Plaintiff against Defendants. The district court denied Defendants' motion for summary judgment on the basis that the Policy bars Defendants from considering Plaintiff's application for reinstatement as a State Police Officer, concluding that Plaintiff did not resign while disciplinary proceedings against him were pending or in process.

{6} Defendants' second motion for summary judgment argued that even if Plaintiff did not resign while disciplinary proceedings were pending or in process, the Policy contains another provision that supports DPS's decision to deny Plaintiff's request for reinstatement. Defendants argued that the Policy specifically requires that a prior State Police Officer seeking reinstatement "must have satisfactorily performed the duties of a New Mexico State Police officer prior to his initial separation from the force." Defendants presented DPS documents along with Chief Maldonado's affidavit indicating that Plaintiff did not satisfactorily perform his duties as a State Police Officer prior to his resignation from the force for several reasons including the Brock incident. The district court granted the Defendants' second motion for summary judgment, observing "that the determination of defendant State Police Chief Maldonado that Plaintiff did not [satisfactorily perform his duties] was not arbitrary or capricious." Plaintiff appeals the summary judgment orders.

## DISCUSSION

### 1. Standard of Review

{7} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The issue on appeal is whether the [movant] was entitled to a [judgment] ... as a matter of law. We review these legal questions de novo." *Self v. United Parcel Serv., Inc.*, 1998–NMSC–046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted). "The movant need only make a prima facie showing that he is entitled to summary judgment." *Roth v. Thompson*, 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). "Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* at 334–35, 825 P.2d at 1244–45. "If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper." *Id.* at 335, 825 P.2d at 1245. The question of whether statutes create or imply a private right of action is a question of law, also reviewed de novo. *See Hovet v. Allstate Ins. Co.*, 2004–NMSC–010, ¶¶ 9–11, 135 N.M. 397, 89 P.3d 69.

### 2. Private Right of Action Under the POEERA

{8} Plaintiff contends that the district court erred in granting Defendants' motion for summary judgment on his claims under the POEERA because the POEERA provides a private right of action. Plaintiff asserts that his POEERA rights were violated because the polygraph results and the attendant investigation regarding the Brock incident should not be used to deny him reinstatement. He asserts that an unauthorized individual intruded during the polygraph interrogation, he did not receive a copy of the interrogation record or the allegations, and the duration of the interrogation exceeded the statutory limit. Plaintiff requests damages for these violations.

{9} Defendants argue that the POEERA does not explicitly create a private right for police officers to sue DPS in district court. Defendants argue that rather than a private right of action, POEERA prescribes certain administrative rights and remedies for peace officers, particularly when they are under investigation by their employer, DPS. *See* § 29–14–2; *see generally Archuleta v. Santa Fe Police Dep't*, 2005–NMSC–006, 137 N.M.

161, 108 P.3d 1019 (discussing the administrative procedures, which include the right to appeal to the district court from an administrative decision). Defendants further contend that the rights provided by the POEERA were available to Plaintiff while he was a State Police Officer under investigation, but that Plaintiff never exercised them. We agree with Defendants. We hold that Plaintiff's claim for a private right of action to sue for violation of the POEERA is without merit when we consider both the structure of the administrative rights and remedies set forth in the POEERA and the cases on which Plaintiff relies, all of which are materially distinguishable.

{10} The POEERA has a specific provision that deals with interrogations and polygraph examinations, and it provides officers other rights while they are involved in investigative and administrative matters, including the right to have an accurate copy of the transcript or tape of any interrogation; the right to produce any relevant documents, witnesses, or other evidence to support their case; and the right to cross-examine any adverse witness during any grievance process or appeal involving disciplinary action. *See* §§ 29–14–4 to–6. Importantly, however, the POEERA itself expressly states that the "[p]rovisions of this act only apply to administrative actions and shall not apply to criminal investigations except [to the extent that peace officers retain constitutional rights in criminal investigations]." Section 29–14–2(C).

{11} Plaintiff relies on a series of Tort Claims Act cases for the proposition that the POEERA creates a private right of action in a similar way. We discuss the critical distinction between these cases and our case later in this opinion. At this point, we set forth the test established in these cases and relied upon by Plaintiff for determining whether a statute creates a right that can be redressed under 42 U.S.C. § 1983, and we show that Plaintiff's claim fails under the explicit language of that test. In *California First Bank v. State*, 111 N.M. 64, 74, 801 P.2d 646, 656 (1990), the Supreme Court noted the two-part test: "(1) whether the legislation creates a right on the part of specific individuals; and (2) whether the legislative remedy explicitly or implicitly fore-

closes enforcement by private individuals through resort to Section 1983." Even assuming that this test applies to this case, the language we have quoted from Section 29–14–2(C), stating that the POEERA applies only to administrative actions, is exactly the sort of express limiter that would preclude the POEERA's usefulness in an ordinary civil action such as the one Plaintiff brought below.

{12} Moreover, we agree with Defendants that there is no express allowance of a private right of action anywhere in the POEERA. *See Patterson v. Globe Am. Cas. Co.*, 101 N.M. 541, 543, 685 P.2d 396, 398 (Ct.App. 1984) (indicating that the legislature knows how to create a private remedy if it intends to do so), *superseded by statute on other grounds as stated in Journal Publ'g Co. v. Am. Home Assurance Co.*, 771 F.Supp. 632, 635 (S.D.N.Y.1991). Finally, we note that not only does the POEERA state that it applies only to administrative actions, but it also states that its provisions do not apply to criminal investigations. Thus, had Defendants contemplated charging Plaintiff with false imprisonment or assault, crimes that were arguably committed during the Brock incident, there would be no private right of action under the express language of this provision. It would be odd indeed to imply a private right of action for violations of provisions of an act that the legislature has expressly said could be violated in the context of criminal investigations. For these reasons, we find no support in the statutory language for Plaintiff's argument concerning a private right of action, and in fact we find express language contrary to it.

{13} Plaintiff places major reliance on several Tort Claims Act cases. We are uncertain how Plaintiff intends these cases to apply. We note that Plaintiff did not file his petition under the Tort Claims Act, and he emphasizes that a "claim pursuant to the POEERA is not a tort claim, it is a claim based upon a statute which is a statutory claim. Violation of the POEERA is not a tort. No common law tort provided the rights that the POEERA provides." Nonetheless, we discuss these cases to show how vastly different they are from this case.

{14} Plaintiff cites *California First Bank,* 111 N.M. at 66, 801 P.2d at 648, in which an estate sued governmental entities for wrongful death and personal injury, which are well-established statutory or common law remedies, as well as for damages under the Tort Claims Act. *California First Bank* concerns sovereign immunity for injury caused by law enforcement officers to third parties under the Tort Claims Act. *Id. California First Bank* specifically held that NMSA 1978, § 29–1–1 (1979), which sets out specific duties of police officers to investigate criminal violations and file reports, may be redressed because the Tort Claims Act waives immunity for violations of rights secured under New Mexico law and such a waiver is consistent with the general public policy regarding compensation for victims of government torts expressed in the Tort Claims Act. *See Cal. First Bank,* 111 N.M. at 74–75, 801 P.2d at 656–57. *California First Bank,* however, does not create a private right of action for non-tortious behavior for police officers against DPS when an officer is under internal investigation for alleged actions that could result in administrative sanctions being levied against the officer.

{15} Similarly, in *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Department,* 121 N.M. 646, 654, 916 P.2d 1313, 1321 (1996), our Supreme Court followed *California First Bank,* holding that the plaintiffs, members of the public, may raise a claim for personal injuries resulting from a law enforcement officer's negligent failure to perform a statutory duty which resulted in a battery. The Court noted that the plaintiffs' tort claims may be enforced under the Tort Claims Act. *Weinstein,* 121 N.M. at 655, 916 P.2d at 1322. As in *California First Bank,* the Court concluded that Section 29–1–1 confers an individual right on the public for violations of police duties to them and that the legislature did not intend to preclude tort liability under the Tort Claims Act for a violation of the right. *Weinstein,* 121 N.M. at 655, 916 P.2d at 1322. The Court reiterated that the police duty to investigate violations of criminal laws, imposed by Section 29–1–1, is designed to protect individual citizens from harm. *Id.; see Schear v. Bd. of County Comm'rs,* 101 N.M. 671, 677, 687 P.2d 728, 734 (1984) (holding that Section 29–

1–1 created a duty that supported a cause of action in negligence against law enforcement officers who failed to investigate a reported assault in progress). Again, *Weinstein,* like *California First Bank,* was decided in the context of well-established torts or claims under the Tort Claims Act and does not create a private right of action for officers against their DPS employer.

{16} Plaintiff also cites *Weidler v. Big J Enterprises, Inc.,* 1998–NMCA–021, 124 N.M. 591, 953 P.2d 1089 and *Michaels v. Anglo American Auto Auctions, Inc.,* 117 N.M. 91, 869 P.2d 279 (1994). We are not persuaded that these cases support Plaintiff's argument. In these cases, as in *California First Bank* and *Weinstein,* the plaintiffs filed tort claims. *See Weidler,* 1998–NMCA–021, ¶ 1, 124 N.M. 591, 953 P.2d 1089; *Michaels,* 117 N.M. at 91, 869 P.2d at 279. *Weidler* and *Michaels* concern claims that stated a common-law cause of action for unlawful discharge. *Weidler* stated that "New Mexico thus recognizes an employee's right to institute a private cause of action, not seeking enforcement of the statute as such, but to enforce his common-law right not to be discharged for reporting unsafe practices in the workplace." 1998–NMCA–021, ¶ 17, 124 N.M. 591, 953 P.2d 1089. In this case, Plaintiff cannot claim and has not claimed any cause of action for wrongful discharge or any common law tort or breach of duty. It is important, too, that Plaintiff has not cited any authority, and we are certainly aware of none, standing for the proposition that a person has any right to reinstatement to a job from which the person has voluntarily resigned.

{17} Therefore, as the structure and wording of the POEERA and Plaintiff's cited cases in support of his argument are unavailing, we hold that the POEERA does not provide a private right of action for this Plaintiff against these Defendants.

### 3. The District Court's Finding That the Decision Not to Reinstate Plaintiff Was Not Arbitrary or Capricious

{18} Plaintiff contends that the district court erred in determining that DPS's decision not to reinstate him was arbitrary

and capricious. Plaintiff argues that the decision by Chief Taylor and Chief Maldonado was arbitrary and capricious because other individuals similarly situated to Plaintiff were reinstated. We do not address this question because Plaintiff's brief and presentation on appeal are insufficient to establish a factual basis for this claim.

{19} Although we denied Defendants' motion to strike Plaintiff's brief in chief during the pendency of this appeal, our denial was without comment or explanation. We therefore could have denied the motion on the merits, denied it because Defendants could as easily raise their objections to Plaintiff's brief in their answer brief, or denied it for a combination of these reasons because Defendants' motion contained numerous complaints about deficiencies in the brief in chief. We now hold that, as to the contention that other individuals similarly situated to Plaintiff were reinstated, Plaintiff did not make an adequate showing of this in his brief in chief or on appeal.

{20} The brief in chief contains a paragraph without a single record reference, saying that Defendants provided information in discovery that various officers who were disciplined were reinstated. It is enough to answer this portion of Plaintiff's argument by the familiar rule that contentions in an appellant's brief not supported by record references need not be considered on appeal. *See Murken v. Solv-Ex Corp.*, 2005–NMCA–137, ¶ 14, 138 N.M. 653, 124 P.3d 1192. However, we also point out that Plaintiff's argument contains no discussion whatsoever concerning the circumstances of those officers' performance or reinstatements as compared to Plaintiff's. As the Supreme Court stated in *Archuleta*, the differing circumstances of different employees' situations makes comparison only marginally relevant. *Archuleta*, 2005–NMSC–006, ¶ 24, 137 N.M. 161, 108 P.3d 1019. Such comparisons are completely irrelevant where we know absolutely nothing about the underlying facts of those officers' disciplinary actions and reinstatements.

{21} As to the one officer about whom Plaintiff's brief contains detailed argument and a record reference, the record reference is to an order sealing a portion of the court file. Plaintiff has not placed before us the sealed portions of the record on which he relies. "It is the burden of the appellant to bring up a record sufficient for review of the issues [he or] she raises on appeal." *Reeves v. Wimberly*, 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct.App.1988). To the extent that the record before us is deficient, we will "indulge in every presumption in support of the correctness of the trial court's decision." *Luxton v. Luxton*, 98 N.M. 276, 278, 648 P.2d 315, 317 (1982).

{22} Plaintiff also maintains that the district court should not have used the administrative standard to review Chief Maldonado's decision because Plaintiff "was not allowed any input whether through a written statement or testimony and he was not allowed to cross examine any witnesses." This contention concerning the appropriate standard used by the district court, interesting though it may be inasmuch as Plaintiff resigned before any administrative proceedings were formally initiated, will not be addressed because it was not raised in the proceedings below. In order to preserve an issue for appeal, the issue must have been raised before the trial court such that it "appear[s] that [the] appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987).

{23} When Defendants moved for summary judgment and contended that Chief Maldonado's decision was not arbitrary or capricious, Plaintiff alleged a factual dispute in which he contended that Chief Maldonado's decision was arbitrary and capricious because Plaintiff had received satisfactory performance evaluations in the past. Plaintiff never argued below that the arbitrary and capricious standard could not be used, and therefore cannot argue on appeal that the district court erred in using an erroneous standard when it ruled that "the determination of defendant State Police Chief Maldonado that Plaintiff did not [satisfactorily perform his duties] was not arbitrary or capricious."

{24} In addition, on appeal, Plaintiff abandons any allegations asserting that the deci-

sion was arbitrary and capricious due to a factual conflict based on his prior alleged good performance by not arguing it in his brief. *See State v. Sandoval,* 88 N.M. 267, 270, 539 P.2d 1029, 1032 (Ct.App.1975) (indicating that points of error identified in the statement of proceedings but neither briefed nor supported by authority are considered abandoned). The arguments in Plaintiff's briefs rely solely on the other officers who are claimed to be similarly situated. However, as stated above, the record is insufficient to establish this ground. Under these circumstances, we cannot say that the district court erred in ruling that Chief Maldonado's decision was not arbitrary or capricious.

## CONCLUSION

{25} We affirm the district court's orders granting summary judgment to Defendants.

{26} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and CYNTHIA A. FRY, Judge.